# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Black Apple iPhone Cell Phone<br>With no other identifying numbers or features<br>Seized as FP&F: 2024250300005901, Line Item: 0001 | Case No. **23mj4608** |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the **Southern** District of **California**, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☐ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324(a)(1)(A)(ii) | Transportation of Illegal Aliens |

The application is based on these facts:
See Attached Affidavit of Homeland Security Investigations Task Force Officer Francisco Mendez, incorporated herein by reference.

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

FRANCISCO D MENDEZ   Digitally signed by FRANCISCO D MENDEZ
Date: 2023.12.22 10:50:53 -08'00'

*Applicant's signature*

Francisco Mendez, Task Force Officer
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by **Telephone** *(specify reliable electronic means)*.

Date: 12/22/2023

*Judge's signature*

City and state: San Diego, California    HON. ALLISON H. GODDARD, U.S. MAGISTRATE JUDGE
*Printed name and title*

# AFFIDAVIT

I, Francisco Mendez, Homeland Security Investigations Task Force Officer, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrants to search the following electronic device(s):

> Black Apple iPhone
> Model: Unknown
> With no identifying numbers or features
> Seized as FP&F: 2024250300005901, Line Item: 0001
> **(Target Device)**

as further described in Attachment A, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324(a)(1)(A)(ii) (Transportation of Illegal Aliens), as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Eduardo NAVARRO-Herrera (NAVARRO) for the transportation of an illegal alien, Marco Isai Urbina-Hernandez (Urbina) within the Southern District of California. The **Target Device** was seized from NAVARRO on or about November 16, 2023, incident to NAVARRO's arrest. The **Target Device** is currently in the possession and custody of the Department of Homeland Security, Homeland Security Investigations, 2051 North Waterman Ave., El Centro, California 92243, and located in the evidence room of that office.

3. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Homeland Security Investigations Special Agents, Border Patrol Agents, and Customs and Border Protection Officers.  Dates and times are approximate.

1

## EXPERIENCE AND TRAINING

4. I am a United States Customs and Border Protection (CBP) Officer with the Department of Homeland Security, Office of Field Operations (OFO). I have been employed as a full-time, sworn federal CBP Officer with the CBP-OFO since March 2015, and graduated from the CBP Basic Training Academy located in Glynco, Georgia. The 20-week academy curriculum covers specialized training in the Immigration and Naturalization Act, criminal law, and statutory authority, as well as cross-training in Title 21, United States Code, Controlled Substances law, and in Title 19, United States Code, Customs law.

5. I am currently assigned as a Task Force Officer with the Homeland Security Investigations (HSI), Human Smuggling/Trafficking Unit. The Human Smuggling/Trafficking Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Task Force Officer, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit,

2

providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.

8. Based upon my training, experience, and consultations with law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with

geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

   a. tending to indicate efforts to transport aliens from Mexico within the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien transportation of smuggled aliens;

   c. tending to identify co-conspirators, criminal associates, or others involved in alien transportation of smuggled aliens;

   d. tending to identify travel to or presence at locations involved in the transportation of smuggled aliens, such as stash houses, load houses, or delivery points;

   e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**FACTS SUPPORTING PROBABLE CAUSE**

10. On November 16, 2023, HSI Special Agents (SAs) and Task Force Officers (TFOs), and U.S. Border Patrol Agents (BPA-Is) assigned to the EL Centro Sector Intelligence Unit, and U.S. CBP Officers assigned to the Criminal Enforcement Unit conducted an enforcement operation at the Calexico, CA Port of Entry (POE). All participating law enforcement personnel wore plain clothes and drove unmarked service vehicles to blend in with the public.

11. On November 16, 2023, at approximately 9:25 a.m., the material witness, Urbina, arrived at pedestrian lane number 54 of the Calexico, CA.POE. At the primary

4

inspection area Urbina presented a California driver's license to primary CBP Officer E. Chong. CBP Officer E. Chong noticed Urbina was an impostor to the driver's license. At approximately 9:26 a.m., Urbina was allowed to enter the United States under surveillance initiated by CBP Officer E. Carrillo.

12. Urbina exited the port of entry and entered a Jack in the Box Restaurant (approximately 50 yards north of the POE). At approximately 9:36 a.m., TFO J. Lopez observed Urbina approach the counter and order food. Urbina sat at one of the available tables and ate his meal.

13. At approximately 10:00 a.m., HSI TFO's C. Gomez and F. Mendez entered the establishment and established surveillance. TFO C. Gomez observed a male subject later identified as NAVARRO, enter the establishment, and acknowledge Urbina by exchanging "head nods" and making "hand signals." TFO C. Gomez observed NAVARRO walk towards the restroom and Urbina began to gather his personal belongings to leave the restaurant.

14. At approximately 10:40 a.m., TFO C. Gomez observed NAVARRO and Urbina exit the restaurant together. HSI SA D. Madero established surveillance and witnessed both NAVARRO and Urbina walk together towards a Volkswagen Passat. NAVARRO was observed entering the vehicle through the driver's side door, while Urbina entered through the front passenger door. NAVARRO was then seen reversing the vehicle to drive away. At this time, agents converged on NAVARRO's vehicle and SA D. Madero and CBP Officers approached NAVARRO and identified themselves by yelling "Police" and displaying their agency issued badges. Both subjects were escorted out of the vehicle, SA D. Madero made contact with Urbina, who admitted he entered the United States by presenting another person's identity. SA Madero placed Urbina under arrest for being illegally present in the United States. Subsequently NAVARRO was placed under arrest for transporting an undocumented non-citizen. NAVARRO and Urbina were transported to the Calexico, CA POE for further processing.

15. At approximately 1:38 p.m., BPA-I J. Arreola and E. Guttierez conducted an interview with Urbina. Urbina admitted he is a citizen of Mexico with no lawfully issued documents that would allow him to enter or live in the United States. Urbina claimed he made the arrangements to be smuggled into the United States. Urbina was going to travel to Santa Ana, California and was going to pay $10,500 to the smugglers.

16. At approximately 2:40 p.m., BPA-I E. Gutierrez and L. Martinez conducted an interview with NAVARRO. NAVARRO was provided his Miranda Rights and stated he understood his rights. NAVARRO elected to answer questions without a lawyer being present. NAVARRO stated he knew Urbina was undocumented and that what he was doing was illegal but agreed to do it anyway because he was going to get paid $1,000 to take Urbina to Santa Ana, CA.

17. During a search incident to arrest of NAVARRO, a Black Apple iPhone (**Target Device**) was located on NAVARRO'S person. NAVARRO claimed ownership of the **Target Device**, which was seized as evidence.

18. Based upon my experience and training, consultation with other law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Device**. In light of the above facts and my experience and training, there is probable cause to believe that Defendant was using the **Target Device** to communicate with others to further the smuggling of illegal aliens into the United States. Further, in my training and experience, alien smugglers may be involved in the planning and coordination of transporting and smuggling events in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the aliens. Based on my training and experience, it is also not unusual for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and

months longer than they claim. Accordingly, I request permission to search the **Target Device** for data beginning on November 3, 2023, up to and including November 17, 2023, the day after the arrest of NAVARRO.

## METHODOLOGY

19.   It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature, and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants, and have functions such as calendars and full address books, and can be minicomputers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network.  Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

20.   Following the issuance of this warrant, a case agent familiar with the investigation will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the telephone, and its memory card will employ search

protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

21. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

22. On November 16, 2023, NAVARRO signed a consent to search form authorizing law enforcement to search the **Target Device**. Pursuant to this consent to search, agents were able to conduct a limited physical search of the phone but were not able to utilize the software that would allow for a full cell phone extraction. Before a full cellphone extraction could be made, however, consent had been revoked.

## CONCLUSION

23. Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Device** will yield evidence of alien smuggling violation of Title 8, United States Code, Section 1324.

I swear the foregoing is true and correct to the best of my knowledge and belief.

FRANCISCO D MENDEZ
Digitally signed by FRANCISCO D MENDEZ
Date: 2023.12.22 10:51:53 -08'00'

Francisco Mendez, Task Force Officer
Homeland Security Investigations

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 22nd day of December 2023.

HON. ALLISON H. GODDARD
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A
PROPERTY TO BE SEARCHED

The following property is to be searched:

> Black Apple iPhone Cell Phone
> With no identifying numbers or features
> Seized as FP&F: 2024250300005901, Line Item: 0001
> **(Target Device)**

The **Target Device** is currently in the possession of the Department of Homeland Security, Homeland Security Investigations, 2051 North Waterman Ave. El Centro, California 92243, and located in the evidence room of that office.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the mobile telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Device for evidence described below.

The evidence to be seized from the mobile telephone will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of November 3, 2023, up to and including November 17, 2023, and is limited to the following:

a. tending to indicate efforts to transport aliens from Mexico within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien transportation of smuggled aliens;

c. tending to identify co-conspirators, criminal associates, or others involved in alien transportation of smuggled aliens;

d. tending to identify travel to or presence at locations involved in the transportation of smuggled aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

which are evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(ii).